UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
Department of Justice
Antitrust Division
450 5th Street, N.W., Suite 7000
Washington, D.C. 20530

      Plaintiff,

v.

GTCR FUND X/A AIV LP,
300 North LaSalle Street, Suite 5600
Chicago, IL 60654,

CISION US INC.,
130 East Randolph Street, 7th Floor
Chicago, IL 60601,

UBM PLC,
Ogier House, The Esplanade
St. Helier, Jersey, JE4 9WG,

PRN DELAWARE, INC.,
2 Penn Plaza, 15th Floor
New York, NY 10121,

and

PWW ACQUISITION LLC
300 North LaSalle Street, Suite 5600
Chicago, IL 60654

      Defendants.

CASE NO.

JUDGE:

FILED:

## COMPLAINT

The United States of America ("United States"), acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the proposed acquisition

of Defendant PRN Delaware, Inc. ("PRN"), a subsidiary of Defendant UBM plc ("UBM"), by Defendant GTCR Fund X/A AIV LP ("GTCR") through its subsidiary Defendant PWW Acquisition LLC ("PWW") (collectively, the "transaction"), and to obtain other equitable relief.

## I. NATURE OF THE ACTION

1. Businesses, nonprofits, and other organizations rely on media contact databases to identify journalists and other influencers for public relations purposes. GTCR's subsidiary, Defendant Cision US Inc. ("Cision"), operates the dominant media contact database in the United States as part of its flagship public relations workflow software suite. As a result of the transaction, GTCR will acquire UBM's PR Newswire business, which operates the third largest media contact database in the United States as part of its public relations workflow software suites sold under the Agility and Agility Plus brands ("Agility"). Cision and Agility compete directly to serve media contact database customers throughout the United States.

2. Cision and Agility face limited competition in the sale of media contact databases in the United States. Only one other media contact database has gained more than a de minimis market share. Elimination of the competition between Cision and Agility would leave many customers in the United States with only two media contact database companies capable of fulfilling their needs. The two remaining companies would have decreased incentives to discount their media contact database subscription prices during negotiations with prospective customers or improve their products to meet competition. As a result, the transaction would likely result in many consumers paying higher net prices and receiving lower quality products and services than they would absent the transaction.

3.      Accordingly, the transaction likely would substantially lessen competition in the media contact database market in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II.    JURISDICTION, VENUE, AND INTERSTATE COMMERCE

4.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

5.      This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345. Defendants are engaged in interstate commerce and in activities substantially affecting interstate commerce. GTCR, through Cision and other subsidiaries, and UBM, through PRN and other subsidiaries, market and sell their respective products and services, including their public relations workflow software suites, throughout the United States and regularly transact business and transmit data in connection with these activities in the flow of interstate commerce.

6.      Defendants have consented to venue and personal jurisdiction in this District. This Court has personal jurisdiction over each Defendant, and venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c).

## III.   THE DEFENDANTS AND THE TRANSACTION

7.      GTCR is a private equity firm headquartered in Chicago, Illinois. GTCR owns Cision, a leading public relations workflow software company. Cision's U.S. revenues were approximately $227 million in 2015.

8.      UBM is a global events marketing and communications services business headquartered in St. Helier, Jersey. UBM owns the PR Newswire business, a leading provider of

commercial newswire services. PR Newswire's 2015 U.S. revenues totaled approximately $209 million.

9. Pursuant to a Purchase and Sale Agreement dated December 14, 2015, PWW—a subsidiary of GTCR—agreed to acquire PR Newswire from UBM for a base purchase price of $850 million. The transaction would result in GTCR becoming the new owner of Agility, eliminating it as an independent competitor in the media contact database market.

### IV.   TRADE AND COMMERCE

#### A.   Relevant Product Market: Media Contact Databases

10. Media contact databases enable users to look up the contact information of one or more of the following classes of persons: print journalists, broadcast journalists, online journalists, other journalists, or other "influencers" (e.g., individuals that are influential on social media with respect to a given topic). Media contact databases typically also enable users to create customized lists of contacts they can then use for targeting outreach to particular groups of journalists and influencers important to the users. Customers typically purchase annual subscriptions to media contact databases at prices individually negotiated with public relations workflow software companies.

11. Media contact databases are essential to the day-to-day operations of many large companies and public relations agencies. Those organizations frequently need to maintain contact with a large number of journalists and influencers across a wide variety of media outlets. For such organizations, manually maintaining up-to-date lists of all relevant media contacts would be highly labor-intensive and imprecise. Thus, that approach does not present a viable alternative to purchasing access to a media contact database. On the other hand, Cision and PR Newswire have developed longstanding and collaborative relationships with media outlets that

they can leverage to more efficiently update their media contact databases. They also have sizable user bases on which they can rely to identify and flag out-of-date contact information in their media contact databases.

12. Developing and maintaining a media contact database competitive with those offered by the three companies with more than a de minimis share would be highly costly and labor-intensive. To develop such a database, it would be necessary to compile contact information for at least several hundred thousand media contacts. In addition, after compiling that information, a media contact database company would need to incur significant ongoing costs to update that information frequently to ensure its accuracy.

13. Media contact databases constitute a relevant product market and line of commerce under Section 7 of the Clayton Act, 15 U.S.C. § 18. GTCR, through Cision, and UBM, through PR Newswire, are participants in this market.

### B. Relevant Geographic Market

14. The relevant geographic market is the United States. Customers in the United States generally require a database that provides comprehensive coverage of U.S.-based media contacts and value a domestic presence for sales, service, and support. A hypothetical monopolist of databases with U.S. based-media contacts and a U.S. presence would be able profitably to impose small but significant and non-transitory price increases on customers in the United States.

### C. Anticompetitive Effects of the Transaction

15. Customers in the United States have few effective choices for media contact databases. For many customers, there are only three media contact databases with sufficiently robust and up-to-date coverage of U.S.-based media contacts to meet their public relations needs.

The transaction will merge two of those databases and will thus be a "merger to duopoly" for those customers, leaving Cision as one of only two bidders they would seriously consider. Although there are nominally other media contact databases, they serve a very small segment of the market and lack sufficient coverage to satisfy many customers' public relations needs.

16. The elimination of competition from Agility would substantially reduce the two remaining bidders' incentives to offer lower prices, better services, or better products to win business from prospective customers. Consumers in the United States will likely experience higher prices, worse services, and inferior products as a result. Moreover, many customers for whom only two media contact database options will remain in the market after the transaction will be vulnerable to anticompetitive effects resulting from coordinated interaction. The two remaining companies could identify customers with limited options, and the resultant coordinated interaction could keep prices high, quality low, and innovation diminished for such customers.

17. In addition, Agility plays a unique competitive role in the marketplace. As an aggressive, frequently low-cost bidder for contracts with prospective media contact database customers, Agility pressures its two rivals to lower their bid prices or risk losing substantial numbers of customers. No such constraint will remain after the transaction.

18. Cision currently has a dominant share of the media contact database market in the United States. The transaction would further enhance its market position and bargaining power with many customers. Accordingly, the transaction increases the likelihood that Cision could profitably exercise its market power in the future.

**D.     Entry**

19.     Due to the costs of developing and updating a media contact database with information for at least several hundred thousand media contacts, it is unlikely that entry or expansion into the media contact database market in the United States would be timely, likely, or sufficient to defeat the likely anticompetitive effects of the transaction.

20.     Moreover, Cision and PR Newswire's positions in the marketplace have afforded them advantages unavailable to most new entrants.  It would take an extensive period of time for a new entrant to build relationships with media outlets, to build its reputation among purchasers, and to grow its user base to be comparable to the Defendants' offerings.

## V.     VIOLATION ALLEGED

21.     The United States hereby incorporates paragraphs 1 through 20.

22.     The transaction would likely substantially lessen competition in the national market for media contact databases in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

23.     Unless enjoined, the transaction would likely have the following anticompetitive effects, among others:

    a.     competition in the development, provision, and sale of media contact databases in the United States will likely be substantially lessened;

    b.     prices for media contact databases will likely increase; and

    c.     innovation and quality of media contact databases will likely decrease.

## VI.     REQUESTED RELIEF

24.     The United States requests that this Court:

    a.     adjudge and decree that the transaction violates Section 7 of the Clayton Act, 15 U.S.C. § 18;

  b. permanently enjoin and restrain Defendants and all persons acting on their behalf from carrying out the transaction, or entering into any other agreement, understanding, or plan by which PR Newswire would be acquired by GTCR, Cision, or any affiliated entity;

  c. award the United States its costs in this action; and

  d. award the United States such other and further relief as may be just and proper.

Dated: June 10, 2016

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
Renata B. Hesse (D.C. Bar #466107)
Principal Deputy Assistant Attorney General

_____
Patricia A. Brink
Director of Civil Enforcement

_____
Scott A. Scheele (D.C. Bar #429061)
Chief, Telecommunications & Media
Enforcement Section

_____
Lawrence M. Frankel (D.C. Bar #441532)
Assistant Chief, Telecommunications & Media
Enforcement Section

_____
Jonathan M. Justl*
Brent E. Marshall
Matthew Jones (D.C. Bar #1006602)
Trial Attorneys

United States Department of Justice
Antitrust Division
Telecommunications & Media Enforcement Section
450 Fifth Street, N.W., Suite 7000
Washington, D.C. 20530
Phone: 202-598-8164
Facsimile: 202-514-6381
E-mail: jonathan.justl@usdoj.gov

*Attorney of Record